IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CASSANDRA A. TONEY,** | : | |
| 120 North Town St. | : | |
| Wilkesville, OH 45695 | : | Case No. 2:20-cv-4749 |
| | : | |
| **Plaintiff,** | : | Judge |
| | : | |
| vs. | : | Magistrate Judge |
| | : | |
| **VINTON INDUSTRIES, INC.,** | : | |
| c/o Registered Agent Russell M. Rogers | : | **JURY DEMAND ENDORSED HEREON** |
| 59097 Randerson Rd., | : | |
| McArthur, OH 45651 | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

NOW COMES Plaintiff Cassandra Toney ("Plaintiff"), by and through counsel, and proffers this Complaint against Defendant Vinton Industries, Inc. ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. Chapter 4111 ("Chapter 4111").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Defendant is doing and has done substantial business in the Eastern Division of the Southern District of Ohio and Plaintiff performed her job duties in the Eastern Division of the Southern District of Ohio.

## THE PARTIES

5. Plaintiff Cassandra Toney is an individual, a United States citizen, and a resident of Vinton County, Ohio.

6. Defendant Vinton Industries, Inc. is an Ohio Non-Profit Corporation registered to do business in Ohio and conducting business in the Eastern Division of the Southern District of Ohio.

7. At all times relevant herein, Plaintiff was an employee of Defendant's as defined by the FLSA and R.C. Chapter 4111.

8. At all times relevant herein, Defendant was an "employer" as defined by the FLSA and R.C. Chapter 4111.

9. At all times relevant herein, Defendant has been engaged in interstate commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in interstate commerce within the meaning of the FLSA, and/or Defendant has an annual dollar volume of sales or business of at least $500,000.00.

10. Upon information and belief, Defendant was fully aware of the fact that it was legally required to comply with the wage and hour laws of the United States and of the State of Ohio.

## FACTUAL BACKGROUND

11. Defendant Vinton Industries, Inc. is in the business of providing services for individuals with developmental disabilities in Vinton and Athens Counties.

12. Specifically, Defendant offers three different types of services to its clients: 1) home provider care ("HPC") services, 2) adult day services, and 3) vocational services.

13. Plaintiff began her employment with Defendant in or around September 2018.

14. Plaintiff was hired as a Direct Service Provider within the HPC service sector.

15. In this role, Plaintiff was responsible for providing in-home care to Defendant's clients, and she reported directly to the HPC Manager.

16. As a Direct Service Provider, Plaintiff was compensated on an hourly basis at a rate of $10.00 per hour.

17. Plaintiff was required to handwrite her hours worked on a timesheet, which she submitted to the HPC Manager on a biweekly basis.

18. In or around March 2019, Defendant asked Plaintiff to assume the role of HPC Coordinator and Billing Officer, in addition to her duties as a Direct Service Provider.

19. As HPC Coordinator, Plaintiff was responsible for covering any missed shifts for Direct Service Providers, serving as the point of contact for Direct Service Providers, and addressing any scheduling or other issues with Direct Service Providers, then relaying the message to the HPC Manager.

20. As Billing Officer, Plaintiff was responsible for gathering and coding billing records from Defendant's employees and submitting those records to Medicaid for payment.

21. Plaintiff worked in these three roles simultaneously between approximately March and November 2019. Plaintiff was paid on an hourly basis, and she regularly worked more than 40 hours per week.

22. However, Plaintiff did not receive overtime compensation at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 per workweek.

23. In or around June 2019, Plaintiff received a raise from $10.00 per hour to $10.75 per hour.

24. In or around November 2019, Plaintiff was informed that she would no longer need to perform the HPC Coordinator and Direct Service Provider duties. Instead, she would work less hours each week and would focus only on the Billing Officer tasks.

25. Between November 2019 and approximately December 15, 2019, while performing only the Billing Officer duties, Plaintiff worked less than 40 hours per week. During this timeframe, Defendant compensated Plaintiff for extra hours each week to make up for the overtime hours she worked between March and November of that year. However, the "extra hours" were paid at Plaintiff's hourly rate of $10.75 per hour—not at the overtime premium she was owed.

26. On or around December 15, 2019, Plaintiff was promoted to the position of HPC Manager.

27. In this role, Plaintiff was responsible for supervising Direct Service Providers; handling staff scheduling issues; creating schedules; creating, distributing, and evaluating all client paperwork; working with client guardians, the Support and Services Administrator, and Defendant's nurse related to client needs and paperwork; creating a new company handbook, policies and procedures; participating in the interviewing of staff; and training staff; among other things. Plaintiff also continued a substantial portion of her job duties as a Direct Service Provider and Billing Coordinator.

28. Between December 15, 2019 and early April 2020, Plaintiff was paid at an hourly rate of $11.50 per hour. Plaintiff regularly worked more than 40 hours per week.

29. In or around April 2020, Defendant began classifying Plaintiff as a salary exempt employee.

30. Between approximately April 4, 2020 and July 3, 2020, Defendant paid Plaintiff a biweekly salary of $961.54.

31. Plaintiff inquired as to why she was switched to salary. Defendant's CEO, Robert Jason Farmer informed Plaintiff that she made too much money, and that Defendant could not afford to pay her overtime as an hourly employee, so she needed to be put on salary.

32. Plaintiff was not exempt from the overtime mandates of the FLSA and Ohio law.

33. Defendant failed to compensate Plaintiff on a salary basis of at least $684.00 per week between April 4, 2020 and July 3, 2020 while classifying her as a salary exempt employee.

34. Although Plaintiff regularly worked more than 40 hours per workweek, Defendant failed to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 each workweek.

35. Plaintiff resigned from her employment, effective on or around July 3, 2020.

## COUNT I
## FLSA, 29 U.S.C. §201, *et seq*. - Failure to Pay Overtime

36. All of the preceding paragraphs are realleged as if fully rewritten herein.

37. Plaintiff was an employee of Defendant's within the previous three years of the filing of this Complaint.

38. Plaintiff was not exempt from the overtime provisions of the FLSA.

39. Defendant failed to compensate Plaintiff at the rate of one and one-half times her regular rate of pay for all hours worked and misclassified her as a salary exempt employee during her employment with Defendant.

40. Defendant was aware that Plaintiff worked more than 40 hours per workweek but did not receive overtime compensation at the rate of one and one-half times her regular rate of pay for hours worked in excess of 40 per workweek.

41. Defendant knew or should have known of the overtime payment requirement of the FLSA.

42. Defendant's refusal to properly compensate Plaintiff as required by the FLSA was willful.

43. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

## COUNT II
### OMFWSA R.C. 4111, *et seq*. – Failure to Pay Overtime

44. All of the preceding paragraphs are realleged as if fully rewritten herein.

45. Defendant violated the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code, Section 4111.03 by failing to compensate Plaintiff at the rate of one and one-half her regular rate of pay for all hours worked in excess of 40 in each workweek and by misclassifying Plaintiff as a salary exempt employee.

46. Defendant was aware that Plaintiff worked more than 40 hours per workweek but did not receive overtime compensation at a rate of one and one-half times her regular rate of pay for hours worked in excess of 40 per workweek.

47. Defendant knew or should have known of the overtime payment requirement of the Ohio Revised Code.

48. Defendant's knowing failure to pay Plaintiff overtime wages at the proper rate for hours worked in excess of 40 per workweek is a violation of Section 4111.03 of the Ohio Revised Code.

49. For Defendant's violations of R.C. 4111.03, Plaintiff is entitled to recover unpaid wages, an additional two times the amount of the unpaid wages, attorneys' fees and costs, and all other remedies available under Ohio law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs are entitled to and pray for the following relief:  As to Count I and II, Plaintiff seeks a declaratory judgment that Defendant's practices complained of herein are unlawful under the FLSA and the OMFWSA; an injunction against Defendant preventing it from engaging in each of the unlawful practices, policies, and patters set forth herein; an award of unpaid wages due under the FLSA and OMFWSA; an award of liquidated damages and/or treble damages as a result of Defendant's failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and R.C., Chapter 4111; an award of prejudgment and post judgment interest; an award of costs and expenses of this action together with reasonable attorneys' fees and expert fees; and such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

/s/ *Greg R. Mansell*
Greg R. Mansell (0085197)
(Greg@MansellLawLLC.com*)*
Carrie J. Dyer (0090539)
(Carrie@MansellLawLLC.com)
**Mansell Law, LLC**
1457 S. High St.
Columbus, OH 43207
Ph: 614-610-4134
Fax: 614-547-3614
*Counsel for Plaintiffs*

**JURY DEMAND**

Plaintiffs hereby requests a jury of at least eight (8) person

/s/ *Greg R. Mansell*
Greg R. Mansell (0085197)